**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| ALFRED A. JOHNSON SR., | : | Case No. 2:22-cv-4179 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Judge Edmund A. Sargus, Jr. |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| ODRC ANNETTE CHAMBERS-SMITH, | : | |
| DIR., ET AL., | : | |
| | : | |
| Defendants. | : | |

**ORDER and**
**REPORT AND RECOMMENDATIONS**

Alfred A. Johnson Sr. has filed a civil rights Complaint with this Court. (Doc. 14). Plaintiff is a state prisoner and is proceeding in this action without the assistance of counsel. Among other things, he alleges that Defendants should have mailed his legal documents to a state court clerk despite his lack of funds to pay for postage. He also alleges that prison staff improperly removed his mother from his visiting list, and that these two actions were taken in an effort to thwart his state habeas corpus case and prevent him from obtaining his freedom. (Doc. 14, PageID 111-12). Plaintiff offers some other claims in three motions to amend his Complaint. (Doc. 7, 9, 12).

The matter is currently before the Court for consideration of Plaintiff's motions to amend, and for an initial screening of his Complaint as required by law. For the reasons that follow, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** Plaintiff's Second and Third Motions to Amend the Complaint, **SEVER** the unrelated claims and **DISMISS** them without prejudice, **DISMISS** the Complaint in its entirety, and **RECOMMEND** that this case be treated as a "strike" under the Prison Litigation Reform Act. The Undersigned will **GRANT** Plaintiff's First Motion to Amend. (Doc. 7).

## I.    **INITIAL SCREENING STANDARD**

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis* (*see* Doc. 13), the Court is required to conduct an initial screening of his Complaint. 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2).

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable *legal* basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable *factual* basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

A complaint must also be dismissed if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]).  Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory."  *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Iqbal*, 556 U.S. at 678.

## II.     PARTIES AND CLAIMS IN THE COMPLAINT

Plaintiff Johnson was, at the time he submitted his Complaint, incarcerated at Belmont Correctional Institution (BECI).  (Doc. 10, PageID 84).  He maintains that he is wrongfully incarcerated and innocent of the crime for which he is incarcerated.  (Complaint,[1] PageID 111). He describes himself as a black inmate, while Defendants are white.  (*Id*.).

---

[1] For better readability, the Undersigned will cite to Plaintiff's Complaint (Doc. 14) simply as the Complaint.  The Complaint was initially submitted as an attachment to Plaintiff's application to proceed *in forma pauperis* (*see* Doc. 1-1) but was not filed separately on the docket until the application was granted.  (*See* Doc. 13).  All PageID references to the Complaint refer to Docket Entry 14.

Plaintiff names nine or ten defendants in his Complaint, all of whom appear to be affiliated with the Ohio Department of Rehabilitation and Correction (ODRC) and/or BECI. (*Id.*, PageID 110). Specifically, he names Annette Chambers-Smith, ODRC Director; David Gray, BECI Warden; C. Scott, DWO (likely, Deputy Warden of Operations[2]); R. Moore, of the Cashier's Office; Patrick Haley,[3] Institutional Inspector; Lt. D. Henry, Mailroom Supervisor; D. Taylor, UMA (likely, Unit Management Administrator[4]); Cpt. Rizzo (position unknown); and R. Matesick (position unknown). He may also have intended to name the ODRC itself as a Defendant; this Report and Recommendations will proceed as if he had expressly done so. (*See id.*).

Plaintiff's claims, which were drafted without the benefit of counsel, are not entirely clear. This fact will not be held against Plaintiff. To the contrary, the Court will construe his filings liberally and in his favor as appropriate in this context. *See* Section I, above.

According to the Complaint, Plaintiff was transferred from North Central Correctional Institution to BECI, where he arrived on October 19, 2022. (Complaint, PageID 111-12). On November 3, 2022, he put legal mail addressed to the Clerk of Court of Marion County, Ohio, in the institution's mailbox. (*Id.*, PageID 110, 121). The mail appears to have included a filing intended for a habeas corpus appeal in Ohio's Third Appellate District Court. Plaintiff prepared a "Personal A/C Withdrawal Check Out-Slip" for postage to mail the envelope to the clerk. (*Id.*, PageID 111, 121).

---

[2] Acronym expanded in *Gipson v. Dep't of Rehab. & Corr.*, No. 2:18-cv-315, 2020 WL 1233638, at *1 (S.D. Ohio Mar. 13, 2020).

[3] Elsewhere, Plaintiff refers to the Institutional Inspector as Mr. Hailey. (*See* Doc. 7, PageID 75). This Report and Recommendations uses "Haley" as written in the caption of the Complaint. (Doc. 14, PageID 110).

[4] Acronym expanded in *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011).

Plaintiff's mail was not sent on November 3.  Instead, it was held by prison officials for a period of time and was not returned to him.  (*Id.*, PageID 112).  Plaintiff believes that, due to his indigency, the prison should have sent out his mail despite his lack of funds to cover the postage. He explains:

> When I came to this institution, we had orientation, while there, this Institutional Inspector did explain that when your balance is at 0.00 one can have mail sent due to indigency. . . . I have a balance of 0.00 and it was explained to me that if at 0.00 legal mail addressed to the clerk will be processed.[5]

(*Id.*, PageID 110).  Instead, Plaintiff was told that his mail was "held due to insufficient funds" for postage.  (*Id.*, PageID 111).  He also suggests that prison staff should have allowed him to use a process called a "lock" to borrow the funds for postage.  (*Id.*, PageID 112).[6]

Plaintiff submitted his Complaint to this Court on November 21, 2022, approximately two and one-half weeks after he first tried to mail the envelope.[7]  (*Id.*, PageID 113).  It appears that Plaintiff's mail was eventually sent from BECI to the state court clerk on November 22, 2022. (Doc. 10, PageID 97).

Intertwined with Plaintiff's allegation about BECI's failure to process and mail his November 3 envelope is an allegation that someone removed his mother from his BECI visiting

---

[5] Plaintiff's Complaint was submitted in all capital letters without spaces between some words.  Quoted portions of the Complaint that appear in this Report and Recommendations use lowercase letters for better readability.  Spaces have also been inserted as appropriate.  The Undersigned has taken care to preserve the original meaning, as best as can be determined.

[6] He says:  "When I got here on 10-19-22, I was given a lock in advance, it was explained it will be taken off later. I had money on my account, they did not take the money until after I spent it."  (Complaint, PageID 112).

[7] Under the prison mailbox rule, "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint."  *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted).  This rule applies in federal courts, but not in Ohio's state courts.  *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011) (citing *State ex rel. Tyler v. Alexander*, 52 Ohio St.3d 84, 555 N.E.2d 966, 967 (1990)) (rejecting *Houston v. Lack*, 487 U.S. 266 (1988)) ("Ohio does not have a prison-mailbox rule similar to that of the federal government").

list. (Complaint, PageID 111-12; *but see* Grievance Communication,[8] Doc. 14, PageID 120 ("As for your mother being erased from your visiting list, I reviewed your visiting list and found that she is the only person on the list. So she has not been removed. However she will need to send in an application in order to be given the ability to visit or send money.")). Plaintiff notes that removal of his mother—his usual source of funds—from his visiting list also prevented her from depositing money for him. (Complaint, PageID 111-12). Plaintiff submits the removal was intentional, as it happened just when he went to mail his habeas corpus filing. (*Id.*, PageID 111). He argues that this was done to delay or prevent his habeas filing and stop him from obtaining his liberty. (*Id.*, PageID 111-12). Together, these two allegations appear to underlie Plaintiff's claims of conspiracy, discrimination, retaliation, racial profiling and targeting, and violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, among other claims.

A third, unrelated issue is raised in Plaintiff's Complaint. He says:

> Cpt. Rizzo, did fail to perform a full investigation on an inmate name 'Wilborne' that was in Bed A#23 Unit 4. This inmate did have a PREA[9] on him for sexual reason while I was sleeping. This inmate is white, and is [believed] to have a sexual nature case. This Cpt. Rizzo, appears to be white also, I am a black inmate. This was on 11-10-22, this same inmate was only moved somewhere else, this inmate Wilborne did return to this same block at 7:00 p.m. on 11-13-22 and does not reside in this area. PREA was violated against me and this Cpt. Rizzo and Institution did racial profile against me and target[] me. I did immediately send a kite to this Cpt. and it was ignored, he sent word to me that I would talk to an investigator. That was on 11-10-22, I have yet to see anyone. This Cpt. Rizzo is in violation of racial profiling & targeting, discrimination, breach of duty, retaliation. In violation of the 1st, 4th, 5th, 8th, & 14th Amendments.

(*Id.*, PageID 111).

---

[8] Plaintiff has provided several pages that appear to be internal communications with prison staff, either in the context of informal requests, complaints, or communications, or more formal grievance procedure documents. The documents will all be referred to as "Grievance Communication(s)" in this Report and Recommendations.

[9] "PREA" is likely a reference to the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq*.

Plaintiff requests monetary relief in the amount of five million dollars, plus attorney fees and paralegal fees of $32,400 and $16,200, respectively.  (*Id.*, PageID 113).

Plaintiff raises these claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and other authority. (*Id.*, PageID 110).  The primary statute, Section 1983,

> authorizes a "suit in equity, or other proper proceeding for redress," against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution."

*Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To state a cause of action under Section 1983, a plaintiff must allege:  "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law."  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).

## III.  <u>MOTIONS TO AMEND OR SUPPLEMENT THE COMPLAINT</u>

Plaintiff has filed three motions to amend his Complaint.  (Doc. 7, 9, 12).  Motions to amend a complaint are governed by Rule 15(a) of the Federal Rules of Civil Procedure.  Generally, at this stage in a prisoner's civil case, a plaintiff may amend his complaint <u>once</u> as a matter of course.  Fed. R. Civ. P. 15(a)(1).  Additional amendments to a complaint require the Court's permission or the opposing party's written consent.  Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). The United States Court of Appeals for the Sixth Circuit has instructed that, in deciding whether to grant a motion to amend, courts should consider the futility of a proposed amendment. *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).  Courts may deny leave to amend where the amendment would be futile.  *Daniels v. Ohio*, No. 2:08-cv-16, 2008 WL 3843574 (S.D. Ohio Aug. 13, 2008) (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003)).

An amendment would be futile "if the claim, even with the amendment, could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss." *Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2020) (cleaned up).  An amendment may also be futile where the plaintiff seeks to add unrelated claims against different parties.  *See Allah v. Smith*, No. 2:22-cv-21, 2022 WL 4395680, at *4 (S.D. Ohio Sept. 23, 2022) (quoting Fed. R. Civ. P. 20(a)(2)(A)-(B)) (finding amendment futile where the "new claim neither arises out of the 'same transaction, occurrence, or series of transactions or occurrences' as Plaintiff's other claims, nor does it involve 'any question of law or fact common to all defendants.'")); *see also Mims v. Simon*, No. 1:22-cv-323, 2022 WL 1284106, at *3 (W.D. Mich. Apr. 29, 2022) (citing Fed. R. Civ. P. 21) (leave to amend may be denied if the amendment would result in the improper joinder of parties or claims).

Here, Plaintiff's three motions to amend appear to contain *additions* to his Complaint concerning matters that occurred *after* he submitted the original Complaint on November 21, 2022. (Doc. 7, 9, 12; *see* Doc. 14, PageID 113 (for date of signature)).  As such, the motions are more properly characterized as motions to *supplement* the Complaint, which are governed by Fed. R. Civ. P. 15(d):

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

Fed. R. Civ. P. 15(d).  Regardless of how the motions are characterized, the same standard of review and rationale apply to motions to amend under Fed. R. Civ. P. 15(a) and motions to supplement under Fed. R. Civ. P. 15(d).  *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002).

### A.     First Motion to Amend/Supplement (Doc. 7)

The Undersigned **GRANTS** Plaintiff's First Motion to amend/supplement the Complaint. (Doc. 7).  The following claims against Shane Sable, the BECI Medical Department, and Joeseph Murphy, its Director, will be analyzed as part of the initial screening.

#### 1.   *Shane Sable*

In his first motion to amend, Plaintiff seeks to add Shane Sable, an employee in the BECI mailroom, as a Defendant.  (Doc. 7, PageID 75).  He alleges that Sable made him "run back and forth to [his] block to confirm" that he was allowed to send out legal mail, when Sable could have just made a call and confirmed this fact.  (*Id.*).  Plaintiff notes in this regard that Inspector Haley *did approve* Plaintiff sending out legal mail.  (*Id.*).  This statement appears to relate to Plaintiff's primary claim that Inspector Haley (and others) refused to process his outgoing November 3 mail as an indigent inmate.  (*See* Complaint, PageID 110-11).  Plaintiff also alleges that Sable told him (erroneously) he was only allowed to send one letter per month.  (Doc. 7, PageID 75).  However, Plaintiff does not appear to allege that Sable prevented him from sending any mail.  (*Id.*).

Plaintiff further alleges that Sable received in the mailroom, but purposely withheld from Plaintiff, a box of food that Plaintiff had ordered.  (*Id.*).  Plaintiff deems this deliberate indifference, racial profiling, targeting, and retaliation.  (*Id.*).

#### 2.   *BECI Medical Department and Joeseph Murphy*

Plaintiff also seeks to add a claim against the BECI Medical Department and Joeseph Murphy, its Director.  (Doc. 7, PageID 75).  He claims that medical care has been delayed or denied for chronic issues such as high blood pressure, pre-diabetes, a lump on his testicles that could be cancerous, and an ingrown toenail.  (*Id.*, PageID 76).

**B.** **Second and Third Motions to Amend/Supplement (Doc. 9, 12)**

Plaintiff's Second and Third Motions overlap. (Doc. 9, 12). In his Second Motion, Plaintiff seeks to add claims against two additional defendants: Jennifer Kuryn, BECI Librarian, and Paul Bumgardner, an investigator at BECI. (Doc. 9, PageID 80). In his Third Motion, Plaintiff again seeks to raise a claim against Librarian Kuryn, and to add claims against Cpt. C. Clarick and Sgt. Henry, who also appear to be affiliated with BECI. (Doc. 12, PageID 104-105).

### 1. *Librarian Kuryn (Second and Third Motions, Doc. 9, 12)*

Plaintiff alleges that Librarian Kuryn made him wait to use a computer in the law library when he had a deadline to meet. (*Id*.). He alleges that she did so as retaliation for him filing this lawsuit. (*Id*.). Plaintiff also alleges that Kuryn favored white inmates, and has purposefully made "copies of the material I did not want, just to see my lawsuit fail." (*Id*.). In his third motion, Plaintiff alleges that Librarian Kuryn blocked his right to litigate by not sending him passes to the library as he requested. (*Id.*, PageID 104). He explains these events with reference to a case pending in the Ohio Court of Claims. (*Id*.).

### 2. *Investigator Bumgardner (Second Motion, Doc. 9)*

With respect to Investigator Bumgardner, Plaintiff raises two issues. First, he alleges that inmate Wilborne "exposed himself" to Plaintiff, which he appears to assert is a violation of the Prison Rape Elimination Act (PREA). (Doc. 9, PageID 80). He alleges that another inmate did the same previously. (*Id*.). It appears that Bumgardner is the investigator to whom Plaintiff was to speak about this issue after he reported it to Captain Rizzo. (*See* Complaint, PageID 111). It further appears that Plaintiff was not satisfied with Bumgardner's response. (Doc. 9, PageID 80).

Second, Plaintiff alleges that Bumgardner wrote him a ticket and had him placed in the hole after Plaintiff made a reportedly "loud irate & disrespectful" phone call to the Clerk of Court

of Wyandot County, Ohio.  (*Id.*).  Plaintiff questions the accuracy of this report and alleges that Bumgardner discriminated against him on the basis of his race and his sexuality.[10]  (*Id.*).

### 3.  *Captain C. Clarick (Third Motion, Doc. 12)*

Plaintiff alleges in the Third Motion that Captain C. Clarick discriminated against him on the basis of his race when he stopped Plaintiff from visiting the library on December 27, 2022. (Doc. 12, PageID 104).  He alleges that Captain Clarick was deliberately indifferent and conspired with Librarian Kuryn to keep him from accessing the courts.  (*Id.*, PageID 105).  From context, this appears to concern Plaintiff's proceedings in the Ohio Court of Claims.  (*Id.*, PageID 104).

### 4.  *Sergeant Henry (Third Motion, Doc. 12)*

Finally, Plaintiff raises some allegations against a Sergeant Henry.[11]  These allegations are unclear. (Doc. 12).  Plaintiff appears to allege that Sergeant Henry denied Plaintiff's right to appeal and to produce exculpatory evidence at a hearing, perhaps as part of an internal prison procedure. (*Id.*, PageID 105).

### 5.  *Recommendation Regarding the Second and Third Motions (Doc. 9, 12)*

The Undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request to add these parties and claims to this lawsuit.  (Doc. 9, 12).  The proposed amendments would be futile.  That is, the new claims would result in improper joinder of parties and claims and would have to be severed from this case under Fed. R. Civ. P. 21, and/or the claims as written fail to state a claim on which relief may be granted.  *See Spigno v. Precision Pipeline*, LLC, 59 F. Supp. 3d 831, 834 (E.D. Mich. 2014) ("If the district court concludes that the pleading as amended could not

---

[10] This allegation is unclear.  Plaintiff does not identify his sexuality, and the Court will not speculate.

[11] Sergeant Henry appears to be a different person than Lieutenant D. Henry, Mailroom Supervisor, named in the original Complaint.  (*See* Complaint, PageID 110-11).

withstand a motion to dismiss, then the court may deny the motion to amend as futile and save the parties and the court the expense of having to confront a claim doomed to failure from its outset.").

**First,** some of these new claims and parties are unrelated to the claims raised in the Complaint.  Rule 20 of the Federal Rules of Civil Procedure provides that "persons . . . may be joined in one action as defendants if:  any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A)-(B).  "Under this rule, a plaintiff may not 'combine into one lawsuit unrelated claims against different defendants.'"  *Cage v. Mich.*, No. 16-cv-11679, 2018 WL 3729062, at *1 (E.D. Mich. Aug. 6, 2018) (quoting *Robinson v. Rodarte*, 2017 WL 1017929, at *2 (E.D. Mich. Feb. 6, 2017), *report and recommendation adopted,* 2017 WL 994350 (E.D. Mich. Mar. 15, 2017)).  As one court explained:

> [M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).[12]

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, some of the claims in the Second and Third Motions are unrelated to the main claims brought in the Complaint.  Plaintiff's original claims concerned the delayed mailing of a habeas corpus filing to a Marion County court due to a lack of funds and the alleged removal of a visitor who could deposit such funds.  (Doc. 14).

---

[12] More discussion of this provision is in Section V, below.

Plaintiff's claims against Librarian Kuryn and Captain Clarick concern the denial of time in the institutional law library, despite Plaintiff's deadline in the Ohio Court of Claims. (Doc. 9, 12). Although these claims concern different legal proceedings, events occurring at different times, and different alleged problems accessing the courts, these claims could arguably be related to the main claim in the Complaint.

However, the claims against Sergeant Henry appear to concern an internal disciplinary proceeding. (Doc. 12). One claim against Investigator Bumgardner concerns discipline for a "loud irate & disrespectful" phone call Plaintiff reportedly made to the Clerk of Court of Wyandot County. (Doc. 9). There is no obvious link between these allegations and the allegations in the Complaint.

The remedy for misjoinder of parties is to sever and dismiss the claims without prejudice:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21. *See also Roberts v. Doe*, No. 16-2082, 2017 WL 3224655, at *2 (6th Cir. Feb. 28, 2017) ("Where parties have been misjoined, a district court may drop a party or sever a claim against a party, but may not dismiss the action on that basis."); *Cage,* 2018 WL 3729062, at *2 (citing Fed. R. Civ. P. 21) ("[T]he proper remedy for such misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice."); *Prince v. Elum*, No. 12-15526 (E.D. Mich. Jan. 14, 2013) (*sua sponte* severing and dismissing claims without prejudice under Rule 21 in prisoner civil rights case for misjoinder).

Accordingly, if this Court were to allow amendment to add these unrelated parties, the claims would need to be severed and dismissed as improperly joined in this case. The amendments are therefore futile. *See Mims v. Simon*, No. 1:22-cv-323, 2022 WL 1284106, at *3 (W.D. Mich.

Apr. 29, 2022) (citing Fed. R. Civ. P. 21) (leave to amend may be denied if the amendment would result in the improper joinder of parties or claims).

One of the claims against Investigator Bumgardner—the PREA issue—appears to be related to a claim in the Complaint. (*Compare* Complaint, PageID 111 (concerning Captain Rizzo not fully investigating an inmate) with the Second Motion, Doc. 9, PageID 80 (Investigator Bumgardner did not provide any relief)). This allegation suffers from a variation of the same problem. Plaintiff's allegations concerning PREA in the Complaint must also be severed and dismissed. These allegations are also unrelated the main claim in the Complaint. As discussed further in Sections B and B.1, these claims should be severed. To allow Plaintiff to include the new claim against Investigator Bumgardner—only to later sever and dismiss it—would be futile. *See Alford v. Mohr*, No. 2:19-cv-1497, 2019 WL 3000964, at *4 (S.D. Ohio July 10, 2019) ("allowing Plaintiff to bring essentially three separate and unrelated claims in a single action would stretch Rule 20's liberal joinder provisions beyond the scope of fairness. Thus, as the Court finds that none of Plaintiff's claims arise out of the same transaction, occurrence, or series of transactions or occurrences, severance of Plaintiff's claims is warranted.").

**Second**, these amendments would be futile because none of the claims raised in the Second or Third Motions plausibly state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). A more thorough discussion of these claims follows in Section IV.B., below.

Accordingly, because granting the Second and Third Motions to amend would result in misjoinder and bring claims before the Court that would have to be dismissed, the Undersigned **RECOMMENDS** that these two motions be **DENIED**. (Doc. 9, 12).

IV.  **DISCUSSION**

Plaintiff's Complaint and the three Motions to amend or supplement the Complaint cover several claims, issues, and legal theories.  Before turning to them, a note is in order.

Plaintiff repeatedly alleges in his filings that Defendants were "deliberately indifferent" to his requests.  He makes this assertion with respect to many of his claims.  The term "deliberate indifference" has a specific meaning in the context of a Section 1983 case.  It does not mean, for example, that a person failed to act as requested, or did not pay enough attention to the request.  Rather, "'deliberate indifference' is a stringent standard of fault" that requires several specific showings to establish liability.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 591 (6th Cir. 2021), *cert. denied*, 143 S. Ct. 84 (2022) (describing the elements in one context).  It typically arises in a claim made under the Eighth Amendment's Cruel and Unusual Punishments Clause, such as a claim of excessive force, or alleging the denial of medical care, or concerning the conditions of confinement—none of which are presented in the Complaint.  To the extent that Plaintiff has used this term in a colloquial sense, the Undersigned has endeavored to classify the substance of his claims as context best allows.

A.  **The Main Claim in the Complaint about Funds to Mail Documents to the Marion County Clerk of Court (Doc. 14)**

At the heart of Plaintiff's Complaint is his allegation that he was unable to mail out legal documents for timely filing in a state habeas case.  (Complaint, PageID 110-13).  He alleges this happened because prison staff purposely prevented his mother from depositing funds (by removing her from his visiting list), and at the same time, refused to pay for (or loan him) the costs of postage.  (*Id*.).  These allegations suggest a few different constitutional claims, which are discussed in turn below.

15

However, the Undersigned first observes that this main conflict appears to have been resolved.  Plaintiff alleges that he tried to mail his legal documents on November 3, 2022.  (*Id.*, PageID 110).  He has provided documentation confirming that his mail was sent out on November 22, 2022, the day after he submitted this Complaint.  (*See* Doc. 10, PageID 97; *see also* Complaint, PageID 113 (reflecting that the Complaint was signed on November 21, 2022)).  Specifically, a Grievance Communication reflects that mail was sent on Plaintiff's behalf to 100 West Main Street, Marion, Ohio 43801 on November 22, 2022.  (Doc. 10, PageID 97).  This is the same address Plaintiff listed on the "Personal A/C Withdrawal Check Out-Slip" for the Clerk of the Marion County Court.  (*See* Doc. 14, PageID 120; Complaint, PageID 110).  Plaintiff confirms in his First Motion to Amend that by at least December 6, 2022, Inspector Haley had approved Plaintiff sending legal mail.  (Doc. 7, PageID 75 ("…on Dec, 6th, 2022, I went to the Mailroom to send legal mail out that was approved by the Institutional Inspector Mr. Hailey. Mr. Hailey did already approve of legal mail sent due to inter office communication memo…")).  Indeed, the docket of the state habeas case reflects that several documents were received from Plaintiff and filed on November 28, 2022.

Some context may be helpful.  Plaintiff says in his Complaint that he was trying to mail documents in a habeas corpus action in Marion County, Ohio.[13]  (Complaint, PageID 110-11).  He identifies one action in an affidavit attached to the Complaint as "Alfred A. Johnson Sr. V. Tom Watson."  (*Id.*, PageID 114).  The online docket of the Marion County, Ohio, Court of Common Pleas reflects a habeas case captioned as *Alfred A. Johnson, Sr. v. Tom Watson,* Case No. 2022 CV

---

[13] Twice in his Complaint, Plaintiff appears to refer to this as a "federal" habeas matter.  (Complaint, PageID 112).  But Plaintiff's habeas matter was, according to the first line of his Complaint, filed in state court—the Marion County, Ohio, Court of Common Pleas.  (*Id.*, PageID 110; *see also* PageID 114).  The petition filed in Marion County confirms that it was filed pursuant to Ohio Revised Code 2725.04, the state habeas corpus statute.  To the Undersigned's knowledge, as of the date of this writing, Plaintiff has not filed a federal habeas corpus petition.  The Undersigned expresses no opinion on whether Plaintiff has met the statutory requirements for doing so.

0155 (available by name or case number search at https://courtrecords.co.marion.oh.us/eservices/search.page.9 (accessed Mar. 7, 2023)).[14]  This state habeas case was filed on May 12, 2022.  The Petition was denied on July 26, 2022, a few months prior to the events described in the Complaint.   (*See* Doc. 6, PageID 63, 65 (documents from the Marion County Clerk's office confirming these dates))

Plaintiff appealed the dismissal of his state habeas corpus petition to Ohio's Third Appellate District for Marion County.  The appeal was Case No. 9-22-47 (also available on the Marion County Clerk's website) (hereinafter "State Habeas Appeal").  (*See also* Complaint, PageID 114 (identifying this appeal by case number)).  It appears that the State Habeas Appeal was filed on September 13, 2022, before Plaintiff's transfer to BECI.  (*See* Doc. 6, PageID 72 (an excerpt of the docket of the State Habeas Appeal)).  The appellate court found that the appeal was filed too late and held that a delayed or late appeal was not permitted under Ohio law.  (*See* Doc. 6, PageID 69, 71 (the Judgment Entry in the State Habeas Appeal)).  The appellate court dismissed the State Habeas Appeal on October 14, 2022.  (*Id.*; PageID 70 (an excerpt from the docket of the State Habeas Appeal)).  This too preceded Plaintiff's move to BECI.

It appears that, in the November 3 mail at issue here, Plaintiff was seeking further review of the appellate court's October 14, 2022 Judgment Entry dismissing the State Habeas Appeal as untimely.  Plaintiff submitted a notice of appeal and related documents, which were ultimately docketed in the appellate court on November 28, 2022.  In one of these documents, Plaintiff specifically says that he mailed documents for an appeal, from BECI, on November 3, 2022, and that the clerk would receive it soon.  *See* Nov. 28, 2022 "Motion of Notice of Appeal" in the State

---

[14] This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

Habeas Appeal. Plaintiff's filings were recharacterized as motions for reconsideration and were denied on December 12, 2022. The appellate court said:

> This matter comes on for determination of Appellant's "Motion to Extend Appeal: Notice of Appeal" and "Motion of Notice of Appeal."
>
> On September 13, 2022, Appellant filed a "Motion for Instanter Appeal" seeking to file an untimely appeal from the trial court's July 26, 2022 judgment denying his petition for writ of habeas corpus. On October 14, 2022, this Court held that untimely or delayed appeals apply to criminal actions, not civil actions such as habeas corpus, and the motion was denied. In response, on November 28, 2022, Appellant filed the instant motions.
>
> Upon consideration, the Court finds that the motions filed by Appellant must be treated as motions for reconsideration because the Court's prior judgment was a final order determining all issues in the appeal. Pursuant to App.R. 26(A)(l), a motion for reconsideration must be filed within ten days after filing of the final judgment. In this case, the motions are filed more than thirty days after the final judgment. As such, the motions are not timely filed. Furthermore, even if considered timely, Appellant fails to raise any error in the final judgment or any issue not properly considered in the first instance. *See Garfield Hts. City School Dist. v. State Bd. Of Edn*. (1992), 85 Ohio App.3d 117; *Columbus v. Hodge* (1987), 37 Ohio App.3d 68. Accordingly, the motions are not well taken.
>
> It is therefore **ORDERED** that Appellant's "Motion of Notice of Appeal" and "Motion to Extend Appeal," seeking reconsideration of the judgment denying the earlier "Motion for Instant Appeal," be, and the same hereby are, denied.

*See* December 12, 2022 "Judgment Entry" in the State Habeas Appeal.

Accordingly, it appears that there was a *delay* in mailing Plaintiff's legal documents to Ohio's Third Appellate District, rather than a complete *denial* of access. (*See* Complaint, PageID 110-11; First Motion to Amend, Doc. 7, PageID 75; Doc. 10, PageID 97). The Undersigned next considers whether this delay states a plausible claim than can be pursued under 42 U.S.C. § 1983.

## 1. *Denial of Access to the Courts*

Under the First Amendment, prisoners have a fundamental right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). "The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must

establish that he suffered an actual injury as a result of the alleged denial." *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 349). "Actual injury" is not shown "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers*, No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. Dec. 21, 2000). "In other words, an inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'" *Winburn*, 43 F. App'x. at 733 (quoting *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The underlying, lost claim must be arguable and nonfrivolous, and "more than [a] hope" for relief. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Nguyen v. Floyd*, No. 1:22-cv-11628, 2022 WL 3045000, at *2-3 (E.D. Mich. Aug. 2, 2022).

Here, it appears that Plaintiff's state habeas corpus petition (filed in the Marion County Court of Common Pleas) was denied before Plaintiff arrived at BECI. His attempted late appeal of that dismissal was itself dismissed (by Ohio's Third Appellate District) before Plaintiff arrived at BECI. Thus, Plaintiff's claim for habeas corpus relief had already been dismissed, twice, when he tried to proceed on November 3. His November 3 mailing was an attempt to take a further appeal from the Third Appellate District's dismissal.

Plaintiff's attempt to take this appeal cannot be said to be nonfrivolous, as it was filed in the entirely wrong court. Under Ohio law, an appeal from the final judgment of one of Ohio's Appellate District Courts must be timely filed in the Supreme Court of Ohio, not the Appellate District Court itself. *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i) ("To perfect a jurisdictional appeal from a court of appeals to the Supreme Court [of Ohio] . . . the appellant shall file a notice of

appeal <u>in the Supreme Court</u> within forty-five days from the entry of the judgment being appealed.") (emphasis added); *see also* Ohio Const. Art. IV, Section (B)(2).  Filing a notice of appeal in the Appellate District Court—even a timely notice of appeal—would be ineffective to institute a further appeal.

This is likely why the Third Appellate District recharacterized Plaintiff's notice of appeal and accompanying documents as motions for reconsideration.  *See* Dec. 12, 2022 "Judgment Entry" in the State Habeas Appeal.  But a motion for reconsideration is due within ten days of the appellate court's final judgment.  Ohio App. R. 26(A)(1)(a).[15]  Here, that would have been October 24, 2022, or ten days after appellate court dismissed his appeal.  (*See* Oct. 14, 2022 Judgement Entry, Doc. 6, PageID 69, 71).  Had Plaintiff filed his documents on November 3, they would have already been too late to be considered timely motions for reconsideration.

The Third Appellate District ultimately did conclude that the filings (construed as motions for reconsideration) were late.  *See* Dec. 12, 2022 Judgment Entry in the State Habeas Appeal.  The appellate court also concluded that Plaintiff had not shown good grounds for relief.  *Id*.  Plaintiff here does not rebut that claim.  (Complaint, PageID 112, 114 (alleging only that the indictment against him was defective because it omitted the appropriate *mens rea*)).  The Undersigned accordingly concludes that there was no arguable, nonfrivolous claim that was lost due to the delay in mailing Plaintiff's documents in November 2022.[16]  The claim for denial of

---

[15] The Rule provides:  "Application for reconsideration of any cause or motion submitted on appeal shall be made in writing no later than ten days after the clerk has both mailed to the parties the judgment or order in question and made a note on the docket of the mailing."  Ohio App. R. 26(A)(1)(a).

[16] The Undersigned notes that Plaintiff's notice of appeal was received and filed by the Third Appellate District on November 28, 2022.  *See* Online Docket of the State Habeas Appeal.  November 28 is, coincidentally, the date that any appeal from the Third Appellate District would have been due in the Supreme Court of Ohio.  *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i).  Thus, it appears that the failure of Plaintiff's attempt to seek further review was not *caused* by the actions of the BECI Defendants, but by a misunderstanding about where the appeal should have been filed.  The Undersigned accordingly cannot conclude that Plaintiff has plausibly alleged a deprivation of federal rights *caused* by the actions of the BECI Defendants.  *See* 42 U.S.C. § 1983.

access to the court under the First Amendment should be dismissed for failure to state a claim on which relief may be granted.

### 2.  *Civil Conspiracy under § 1983*

Plaintiff also frames his allegations in terms of a civil conspiracy.  While he *lists* this claim as against Defendants Gray, Scott, Moore, Haley, Henry, Taylor, and Matesick (*see* Complaint, PageID 110), he only includes factual allegations that might be construed as supporting a conspiracy claim against three Defendants:  R. Moore in the Cashier's Office, Lt. D. Henry, the mailroom supervisor, and Patrick Haley, the Institutional Inspector.  The allegations are as follows:

> Mr. R. Moore is responsible for the Cashiers Office and I have kited him on my mail and my money being put into my account. He is very deliberately indifferent on his answers. His job is to make sure my mail goes out, once money is taken off.

(Complaint, PageID 111).  And:

> I have contacted Lt. D. Henry, supervisor of the mail room. And she has not answered in time for my deadline, for me to inquire of my property. With this institution having several situations previously, one should know what to do to fix problems quickly. This is why I am showing a set of facts on a civil conspiracy to commit, I have gotten a copied cash slip and anytime mail goes out a receipt goes on our jpay. I have none as of 11-15-22, Lt. D. Henry has a duty to communicate outside of myself, and with me sending in request on my mail before my mail before my deadline and her not answering is violating my 8th & 14th Amendment rights.

(*Id*.).  And:

> This Mr. Haley has caused intentional emotional distress, by not sending my mail out like the *Garrison* case. I have several [inquiries] to him and other staff members and they have given me that run around on my legal mail that has a deadline of 11-15-22. I asked where my mail was and in none of the inquiries other than one, that states that your mail is held due to insufficient funds, I would have to deal with the Inspector. . . . In the *Garrison* case he said the Inspector had communication problems with the mail office, this is the issue at hand [in] this instance.

(*Id.*).

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action."  *Crowley v. Anderson Cnty., Tenn.,* 783 F. App'x 556, 560 (6th Cir.

2019) (internal citations and quotations omitted).  "To prevail on a civil conspiracy claim, a plaintiff must show that (1) a single plan existed, (2) the defendant shared in the general conspiratorial objective to deprive the plaintiff of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury to the plaintiff." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)) (cleaned up).

"Courts have traditionally viewed conspiracy suits against public officials with suspicion and disfavor."  *Heid v. Aderholt*, No. 2:20-cv-901, 2022 WL 3025431, at *5 (S.D. Ohio Aug. 1, 2022) (cleaned up).  "The Sixth Circuit has warned that 'conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'"  *Ayers v. Gabis*, No. 20-11735, 2021 WL 4316853, at *6 (E.D. Mich. Sept. 23, 2021) (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).  "These guidelines have led the court to conclude that the 'pleading requirements governing civil conspiracies are relatively strict.'"  *Id*.

Plaintiff has not pled a plausible conspiracy claim here.  He asserts that Defendants conspired to prevent him from pursuing his habeas corpus action.  (Complaint, PageID 112).  He identifies the purpose of the conspiracy as "one thing. And that is to see me lose! My equel liberty to live."  (*Id*.).  The acts allegedly in furtherance of the conspiracy include not sending his mail when requested and removing his mother from his visiting list (although he does not know who allegedly took this action).  (*Id*. ("The cause of my holding my mail illegally and the removing of my visitor to meet my official deadline, did prejudice me of a right to the federal courts.")).  But all Plaintiff offers is his speculation that Defendants all agreed to keep him from filing his habeas corpus documents.  (*See, e.g., id.*, PageID 111-12 ("It was definitely ordered to discriminate

against me and to hold my mail and to take a visitor off just so I cannot have funds to send on my own. This Institutional Inspector has history and this Warden and Institution to cause purposeful harm and to injure me emotionally.")).  This kind of "speculation and conjecture are insufficient to establish the existence of an agreement" for a conspiracy claim.  *Regets v. City of Plymouth*, 568 F. App'x 380, 391 (6th Cir. 2014) (citing *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989)).

Nor is an inference that Defendants agreed to derail Plaintiff's habeas case plausible here. As explained next, it appears that ODRC policy was *followed* with respect to mailing documents for indigent inmates.  And, the institutional rules about visitors arguably support what happened with Plaintiff's visiting list when he was transferred to BECI.

With respect to mailing documents, Plaintiff refers to ODRC Policy No. 59-LEG-01, entitled Inmate Access to Court and Counsel, available at https://drc.ohio.gov/policies/legal (accessed Mar. 7, 2023).  (*See also* Doc. 2-1, PageID 26-27 (attaching an excerpt from this policy)). Under the policy, indigent inmates are "entitled to free first-class mail to courts of law."  (*Id*.).

But the policy also specifies how the ODRC determines who is indigent:

> An inmate is considered indigent if, during the 30 days immediately preceding the request, the inmate has earned or received less than $12.00 and, if the inmate's account balance has not exceeded $12.00 at any time during the thirty (30) days immediately preceding the request.

(*Id*.).  Because Plaintiff has provided two set of prisoner trust fund account statements in this case, this core claim of indigency may be examined.  (Doc. 1, PageID 2-6; Doc. 10, PageID 88-92).

As noted, Plaintiff alleges that he attempted to mail documents on November 3, 2022. (Complaint, PageID 110).  His account statement reflects that he did in fact receive more than $12 within 30 days of that attempt.  Specifically, on October 18, 2022, an amount of $100.00 was credited to his account.  (Doc. 10, PageID 90).  Plaintiff confirms this deposit several times in his

Complaint. (Complaint, PageID 112 ("On 10-18-22 I last for money in from Mary Johnson" and "The time frame of my visitors last submitted money of 10-18-22 to the time I sent this mail of 11-3-22."); *see also* Grievance Communication, Doc. 14, PageID 120 ("also someone has erased my mother off my list she just sent me money on the 18th of October "). He also says, somewhat confusingly, that he "was not indigent when I got here [to BECI], I had money to pay." (Complaint, PageID 112).

It appears that if Petitioner was not indigent within the definition of Policy No. 59-LEG-01 on November 3, he would not have been entitled to free first-class mail to courts of law *at that time*. He may have qualified as an indigent inmate under the policy at a later date. Indeed, it appears that his mail was sent on November 22, 2022. (Doc. 10, PageID 97; *see also* First Motion to Amend, Doc. 7, PageID 75).

With respect to Plaintiff's allegation that his mother was removed from his visiting list, the Undersigned first notes that the documents he submitted rebut this assertion. In one of the Grievance Communications attached to the Complaint, Inspector Haley explained said:

> As for your mother being erased from your visiting list, I reviewed your visiting list and found that she is the only person on the list. So, she has not been removed. However, per policy she will need to send in an application to be given the ability to visit or send money.
>
> 76-VIS-01, Inmate Visitation
>
> Tentatively Approved - A status in the approval process for visitation when the applicant has returned an application for visitation, processing has been completed, and approval is pending until the initial visit.

(Complaint, PageID 120). *See* ODRC Policy No. 76-VIS-01, entitled Inmate Visitation, available at https://drc.ohio.gov/policies/visiting (accessed Mar. 7, 2023).

Plaintiff submits an apparent excerpt from the BECI "Institution Handbook" to support his argument that wrongdoing occurred. (*See* Doc. 2, PageID 22-25). The document does state that:

24

"If an incarcerated individual is transferred from another institution with an 'Approved Visiting List,' it will be honored."  (Doc. 2, PageID 25).  But the document also says that:

> Each potential visitor, regardless of age, must complete a Visitation Application (DRC2096) including immediate family members, friends, and members of the clergy.  . . .  The unit case manager maintains the list and all visitors must be approved through the application process and their names transferred to the Approved Visitors List. The visitor is required to read and sign the visiting rules and return it with their visiting application to the following address:
>
> > Belmont Correctional Institution
> > Visiting Application Enclosed
> > P.O. Box 540
> > St. Clairsville, Ohio 43950
>
> With the exception of attorneys and official visitors, each potential visitor must complete a Visitation Application for approval.

(Doc. 2, PageID 24).  *See also* ODRC Policy No. 76-VIS-01, Section C.1 ("With the exception of attorneys and official visitors, each potential visitor must complete a Visiting Application (DRC2096).").

Plaintiff's argument appears to be that the first cited provision should overcome the second. While there is some ambiguity, the Undersigned is unable to conclude that Plaintiff has adequately alleged that wrongdoing has occurred, such that might support an inference of "an agreement between two or more persons to injure another by *unlawful* action."  *Crowley*, 783 F. App'x at 560 (emphasis added).

That these two events occurred at the same time, and at the same time Plaintiff sought to file in his habeas appeal, also does not establish a conspiracy.  *See Alger v. McDowell*, No. 19-12889, 2021 WL 6930585, at *4 (E.D. Mich. Dec. 27, 2021), *report and recommendation adopted*, 2022 WL 468589 (E.D. Mich. Feb. 14, 2022) (quoting *Twombly,* 550 U.S. at 556-57) ("An allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, merely parallel conduct could just as well be independent action.") (cleaned up).

25

As the United States Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In light of the far more likely possibility that the various incidents were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

*Churn v. Black*, No. 1:21-cv-540, 2022 WL 806925, at *3 (W.D. Mich. Mar. 17, 2022).

Plaintiff's Complaint does not plead sufficient facts to show an agreement to deprive Plaintiff of his constitutional rights by unlawful action. Rather, it demonstrates the far more likely scenario that the BECI Defendants acted pursuant to an interpretation of two ODRC policies with which Plaintiff disagrees. The Undersigned accordingly concludes that Plaintiff has not pled sufficient facts to show all the elements of a civil conspiracy claim under 42 U.S.C. § 1983 under the "relatively strict" standard set by the Sixth Circuit. *See Warner v. Bevin*, No. 3:16-cv-422, 2017 WL 88991, at *7 (W.D. Ky. Jan. 9, 2017) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)) (dismissing conspiracy claim where plaintiff "provides no factual support of a conspiracy other than the repeated recitation that one existed. 'The web of inferences is too weak on the alleged facts to permit a finding, absent sheer speculation, that Defendants shared an unlawful objective.'") (cleaned up). This claim should be dismissed for failure to state a claim on which relief may be granted.

### 3. *Conspiracy under 42 U.S.C. § 1985*

Plaintiff twice cites to this statute in his Complaint, but without argument or specific factual development. (Complaint, PageID 110, 112). "A conspiracy claim pursuant to 42 U.S.C. § 1985 must be one which deprives an individual of equal protection under the law." *Mason v. LaPointe*, No. 3:12-cv-1881, 2012 WL 5939283, at *3 (N.D. Ohio Nov. 26, 2012), *aff'd,* No. 12-4533 (6th Cir. Aug. 21, 2013) (unpublished).

> To state a claim for relief under Section 1985, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or a class of persons, directly or indirectly, of equal protection of the laws; (3) through an act in furtherance of the conspiracy; (4) which causes injury to plaintiff or plaintiff's property or deprives him of any right or privilege of a citizen of the United States.

*Id.* (citing *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). As discussed in the previous section, Plaintiff has failed to adequately plead a conspiracy among Defendants, which is the first element of a claim under § 1985. For the same reasons, he does not adequately plead a conspiracy for the purpose of depriving him of equal protection of the law. This claim should also be dismissed for failure to state a claim on which relief may be granted. *See id.,* 2012 WL 5939283, at *4 ("Plaintiff's vague and conclusory allegations are not sufficient to state a Section 1985 claim for conspiracy.").

### 4. *Equal Protection Violation*

Plaintiff raises an equal protection claim, although its scope is not entirely clear. There are two potential allegations that could make up his claim. First, Plaintiff accuses several Defendants of racial discrimination and/or racial profiling/targeting, based on the fact that he is black and they are white. (*See, e.g.*, Complaint, PageID 111 ("I am a black inmate and I am wrongfully incarcerated in prison, I should not have to go through this to make it home, I am innocent, these staff members are white.")). Second, Plaintiff says: "I should have been given the same [equal] protection that all other inmates have to have mail postage on a loan, this does violate the 14th Amendment and does cause undue emotional distress." (*Id.*, PageID 112).

The Undersigned recognizes that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Lee v. Washington*, 390 U.S. 333 (1968)). But, "vague, conclusory allegations of racial discrimination are not enough to state an equal protection claim." *Jackson v. Madery*, 158 F. App'x 656, 659 (6th Cir. 2005), *abrogated on other grounds*

27

by *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018). *See also Bishawi v. Ne. Ohio Corr. Ctr.,* 628 F. App'x 339, 344-45 (6th Cir. 2014) ("Conclusory equal protection claims, without specific factual allegations, are inadequate to state a civil rights claim.").

To state an equal protection claim, a prisoner must allege sufficient plausible facts to show "that a state actor intentionally discriminated against [him] because of membership in a protected class." *Henry v. Metro. Sewer Dist.,* 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks omitted), *abrogated in part on other grounds by King v. Harwood*, 853 F.3d 568, 580 n.4 (6th Cir. 2017); *see also Herron v. Harrison,* 203 F.3d 410, 417 (6th Cir. 2000); *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 255-56 (1995)).

Plaintiff does not plead such facts in his Complaint. With respect to the first equal protection assertion, Plaintiff simply alleges that he is black and Defendants are white, and concludes that they have discriminated against him. More is required to state an equal protection claim. *See Jarrett v. Greene*, No. 1:22-cv456, 2022 WL 13795466, at *6 (S.D. Ohio Oct. 24, 2022), *report and recommendation adopted*, 2022 WL 17253595 (S.D. Ohio Nov. 28, 2022) (dismissing a "bare claim" of discrimination for failure to state a claim); *Success v. Macauley*, No. 1:21-cv-254, 2021 WL 5002311, at *19 (W.D. Mich. Oct. 28, 2021) (plaintiff's conclusory allegation that defendants engaged in racial discrimination fails to state an equal protection claim).

Plaintiff's second allegation that he was treated differently than other indigent inmates is difficult to assess. He primarily compares himself to another BECI inmate named Garrison who filed a habeas corpus petition in this Court a few years ago. (Complaint, PageID 110-11). He cites the case *Garrison v. Gray*, which appears to refer to a superseded Report and Recommendation filed in *Garrison v. Gray*, No. 2:18-cv-1152, 2019 WL 3238573 (S.D. Ohio July 18, 2019).

28

Therein, a Magistrate Judge of this Court noted the parties' conflicting evidence about why that habeas petitioner's mail had not been sent.  The petitioner made an argument similar to Plaintiff's mailing argument here in an attempt to excuse his late filing in state court.  The Record in that case contained an explanation from Inspector Haley.  The Court noted:

> Mr. Haley tells a different story. His Affidavit indicates Garrison was not indigent by the definition of indigency in the prison regulations applicable to these circumstances.
>
>> An inmate is considered indigent if, during the 30 days immediately preceding the request for free mailing, the inmate has earned or received less than $12.00 and if the inmate's account balance has not exceeded $12.00 at any time during the 30 days immediately preceding the request. According to Garrisons' Inmate Demand Statement which I recently again reviewed, Garrison had more than $12.00 as of March 9, 2018, when he received $20.00 of state pay and spent $9.48 at the Commissary on March 14, 2018, as I noted in my response to Garrison's grievance at the time. Garrison attempted to get a benefit he was not entitled to, and so I denied his grievance.

*Garrison v. Gray*, 2019 WL 3238573, at *4 (S.D. Ohio July 18, 2019), *superseded*, 2019 WL 3501519 (S.D. Ohio Aug. 1, 2019), *report and recommendation adopted*, 2020 WL 2028252 (S.D. Ohio Apr. 28, 2020).[17]

Plaintiff compares himself to Garrison and suggests he was treated differently because Garrison's mail "was eventually sent out."  (Complaint, PageID 110).  But that is what happened here, too.  (Doc 7, PageID 75; Doc. 10, PageID 97).  The Undersigned can discern no plausible equal protection claim in this respect.

To the extent that Plaintiff believes he was treated differently in that BECI would not loan him funds but would loan other inmates funds for mailing, he has failed to provide any coherent explanation of how such a program would work, who was eligible for it, whether he sought a loan,

---

[17] Notably, this Court did not conclude in *Garrison* that the petitioner's mail was improperly handled.  Instead, the Court set the issue aside and dealt with the habeas corpus claims in another way.  *See Garrison,* 2019 WL 3501519, at *1 (S.D. Ohio Aug. 1, 2019).

how his request was handled, and why his request was denied.  He also fails to allege that any particular indigent inmate was treated differently in this respect.  These requirements cannot be ignored.  *See Napolitano*, 648 F.3d at 379 (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").  Plaintiff's failure or inability to do so means that his claim cannot proceed.

Finally, the Undersigned notes that Plaintiff's trust fund account statement *does* reflect a loan or "lock" from BECI to Plaintiff on October 21, 2022.  (*See* Doc. 1, PageID 5-6; Doc. 10, PageID 90, 592).  Having carefully considered Plaintiff's allegations in this respect, the Undersigned is unable to discern exactly what Plaintiff is arguing here.  The Undersigned recommends that any equal protection claim based on these allegations be dismissed.  *See Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (courts "are not required to conjure up allegations not pleaded or guess at the nature of an argument.").

### 5. *Violations of State Law or Policy*

To the extent Plaintiff asserts that Defendants failed to follow ODRC policies concerning mail by indigent inmates or maintaining inmate visiting lists, or Ohio Admin. Code § 5120-9-18 (concerning "Outgoing Mail"), his claim cannot be pursued under Section 1983.  (*See* Complaint, PageID 110-13).  Even if Plaintiff is correct in his assertions, Section 1983 does not provide a remedy for violations of state laws or regulations.  *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of

some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate").

Moreover, "[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and other cases). Thus, "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases); *Burgess*, 2021 WL 5816830, at *4 ("to the extent that Williams identifies state policies as conferring a right for a § 1983 claim, the Court dismisses that claim").

Plaintiff's claims that Defendants violated state law or policy should therefore be dismissed for failure to state a claim on which relief may be granted. *See Brown v. Mahlman*, No. 1:22-cv-239, 2022 WL 17817615, at *3 (S.D. Ohio Dec. 19, 2022) (dismissing alleged violations of ODRC policy because they "fall outside the scope of § 1983").

### 6. *Claims against the ODRC*

To the extent that Plaintiff intended to name the Ohio Department of Rehabilitation and Correction (ODRC) as a defendant here, any claims against it should be dismissed. (Complaint, PageID 110). As noted above, to state a cause of action under § 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by *a person* acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (emphasis added).

The ODRC is not a "person" for purposes of this statute. *See Vizcarrondo v. Ohio Dep't of Rehab. & Corr.*, No. 1:18-cv-1255, 2019 WL 6251775, at *5 (N.D. Ohio Nov. 22, 2019)

("multiple courts have found that ODRC is not a 'person' subject to suit under 42 U.S.C. § 1983."); *Peeples v. Ohio Dep't of Rehab. & Corr.*, 64 F.3d 663 (6th Cir. 1995) (affirming the district court's dismissal of suit against the ODRC which said that "the ODRC is not a 'person'") (unreported table case).  Plaintiff therefore fails to state a claim against the ODRC upon which relief may be granted.

### 7. *Claims against Director Chambers-Smith, Warden Gray, DWO Scott*

Plaintiff names ODRC Director Annette Chambers-Smith as a defendant.  But he provides no facts to support—or even describe—his claims against her.  The only mention of the Director in the body of the Complaint is in the form of a legal conclusion, as follows: "Director Annette Chamber-Smith is directly in violation of failure to train and supervise & superior respondeat of the 1st, 4th, 5th, & 14th Amendment."  (Complaint, PageID 110).

This brief allegation fails to state a claim upon which relief can be granted.  First, a claim consisting only of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A plaintiff, even one proceeding pro se, must plead sufficient *facts* to show how each defendant allegedly violated plaintiff's rights.  *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Second, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another."  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).  For such a claim to proceed, "a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting

*Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (cleaned up).  Plaintiff does not allege any facts in the Complaint that satisfy this requirement.

Third, it is well-settled that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability."  *Hinton v. Skipper*, No. 1:21-cv-480, 2021 WL 4859744, at *2 (W.D. Mich. Oct. 19, 2021) (citing *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009)).  "Rather, individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior."  *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)).  There are no allegations here of any allegedly unconstitutional behavior by the Director.  Plaintiff's listing of claims against the Director, without providing any facts to support those claims, are insufficient to state plausible claims against her.

Plaintiff lists his claims against Warden Gray in a similar fashion.  He says that:

David Gray, Warden, is in direct violation of failure to train and supervise, civil conspiracy, racial profiling & targeting, intentional emotional distress & discrimination & retaliation. Violating the 1st, 4th, 5th, 8th, 14th, amendment[s].

(Complaint, PageID 110).  There are no facts pled to show *how* Warden Gray allegedly committed these violations.  The only other mentions of Warden Gray are a single phrase that Plaintiff went to the UMA and Warden to raise the mailing issue (*Id.*, PageID 111), and an allegation that "this Warden and Institution to cause purposefully harm and to injury me emotionally."  (*Id.*, PageID 112).

With respect to DWO Scott, Plaintiff lists his claims as follows:  "Mr. C. Scott, DWO is in direct violation of civil conspiracy, discrimination, retaliation, failure to train and supervise, targeting, in violation of the 1st , 4th, 5th, 8th, & 14th Amendment[s]."  (*Id.*, PageID 110). There are no further mentions of, or allegations against, DWO Scott in the Complaint.

These claims fail for the same reason as the claims against the Director. Plaintiff has provided no factual allegations against them and has provided no basis for this Court to conclude that there is a plausible constitutional claim against them. All claims against these three Defendants should be dismissed.

### 8. *Claim against Shane Sable concerning mailing items out (Doc. 7)*

One part of Plaintiff's claim against Shane Sable arguably relates to the main mailing issue raised in the Complaint. Specifically, Plaintiff alleges in his First Motion to amend/supplement that Sable made him "run back and forth" to his block to confirm that he was allowed to send legal mail out, when Sable could have just made a call to confirm it. (Doc. 7, PageID 75). Plaintiff does not allege the Sable prevented him from mailing out any legal documents. (*Id*.).

While this interaction may have been frustrating for Plaintiff, it does not demonstrate the deprivation of any federal rights. Had Plaintiff pled this as a claim of denial of access to the courts, it would likely fail for a lack of "actual injury" to a nonfrivolous claim as discussed in Section IV.A.1. This allegation should similarly be dismissed for failure to state a claim on which relief may be granted.

### 9. *Official Capacity Claims for Damages*

Had Plaintiff successfully pled the above claims, he would be unable to recover monetary damages from any Defendant in his or her official capacity. Plaintiff does not specify in the Complaint how he sues Defendants, but he appears to have sued them in their official capacities as officers or employees of the ODRC. *See Vittetoe v. Blount Cnty., Tenn.*, 861 F. App'x 843, 851 (6th Cir. 2021) ("We assume that a government official is being sued in his official capacity, unless the pleadings provide notice that he is being sued individually."). To the extent that he sues Defendants in their official capacities, all of his claims for monetary damages are barred as a matter of law.

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989)).

Here, it appears that all Defendants are working for BECI and/or ODRC, which is an agency of the State of Ohio. *Fields v. Ohio Dep't of Rehab. & Corr.*, No. 2:15-cv-1271, 2015 WL 6755310, at *3 (S.D. Ohio Nov. 4, 2015).  Claims against them in their official capacities are thus the same as claims against the State of Ohio.

Claims for damages against the State of Ohio are barred by the Eleventh Amendment to the United States Constitution, which "'denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent.'" *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018) (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)).  "The [United States Supreme] Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Maben*, 887 F.3d. at 270, (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  Here, "because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983," the State of Ohio has immunity for claims against it. *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) (citing *Ohio v. Madeline Marie Nursing Homes* # 1 & # 2, 694 F.2d 449, 460 (6th Cir. 1984) and *Giles v. Univ. of Toledo*, 478 F. Supp. 2d 924, 960-61 (N.D. Ohio 2007)).

This immunity "extends to state officials sued in their official capacity" for damages, such as is pursued here. (Complaint, PageID 113). *Smith v. DeWine*, 476 F. Supp. 3d at 650-51. Again, this is because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, which is no different from a suit against the State." *McCoy v. Michigan*, 369 F. App'x. 646, 654 (6th Cir. 2010) (quoting *Will*, 491 U.S. at 71) (cleaned up). All claims for monetary damages against Defendants in their official capacities should therefore be dismissed.

### 10. <u>Recommendation on the Mailing Claims (Doc. 14; Doc. 7)</u>

The Undersigned has carefully reviewed and considered Plaintiff's allegations that he was unable to mail legal documents on November 3, 2022. Even liberally construing those allegations, the Undersigned concludes that Plaintiff has failed to state a claim on which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b). Further, Plaintiff's claims for monetary damages against Defendants in their official capacities are barred as a matter of law. 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b). For these overlapping reasons, the Undersigned **RECOMMENDS** that the Court **DISMISS** all of these claims under 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

**B.**     **Other Claims Against Other Defendants**

As discussed above, Plaintiff has also raised claims about:

1. Failure to investigate a PREA claim (Captain Rizzo and Investigator Bumgardner (Complaint, PageID 111; Second Motion, Doc. 9, PageID 80-81).

2. Not delivering a food box (Shane Sable; First Motion, Doc. 7, PageID 75).

3. Inadequate medical care and medication (Joeseph Murphy and BECI Medical Department, First Motion, Doc. 7, PageID 76).

4. Not getting passes to, or a seat in the law library (Librarian Kuryn and Captain Clarick, Second and Third Motions, Doc. 9, PageID 80 and Doc. 12, PageID 104-105).

5. Discipline for making a "loud irate & disrespectful" phone call (Investigator Bumgardner, Second Motion, Doc. 9, PageID 80-81).

6. Being denied due process at an internal prison hearing  (Sergeant Henry, Third Motion, Doc. 12).

With the exception of Defendant Rizzo, none of these individuals are named in the Complaint.

For the reasons discussed in Section III and III.B.5, it is appropriate to sever the misjoined PREA claim against Captain Rizzo and dismiss it without prejudice.  *See* Fed. R. Civ. P. 21 (concerning misjoinder and the court's authority to sever claims); *Harris v. Erdos*, No. 1:21-cv-104, 2021 WL 1564609, at *4 (S.D. Ohio Apr. 21, 2021) (citing *Cage v. Mich.*, No. 16-cv-11679, 2018 WL 3729062, at *1 (E.D. Mich. Aug. 6, 2018)) ("[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice.").

The claims in the First Motion to amend/supplement (which has been granted) against Defendant Sable (concerning a food box) and Defendant Murphy and the BECI Medical Department (concerning medical care) should be severed and dismissed without prejudice for the same reasons.  (Doc. 7).

The Second and Third Motions against Defendants Bumgardner, Kuryn, Clarick, and Henry should be denied as futile, because they would also result in misjoinder, and/or because

none of these claims are sufficient to state a claim on which relief may be granted.  (Doc. 9, 12). These claims are discussed in the following sections.

Finally, while the Undersigned will recommend that the Court not allow these claims to become part of this case, the Undersigned will also note that attempting to raise these claims in the future may be a frivolous pursuit and may further be complicated by the "Three Strikes" provision of the Prison Litigation Reform Act, which is discussed in Section V, below.

### 1. *Failure to Investigate a PREA Claim (Captain Rizzo and Investigator Bumgardner)*

In the Complaint, Plaintiff alleges that Captain Rizzo failed to fully investigate another inmate who "did have a PREA on him for sexual reason while I was sleeping."  (Complaint, PageID 111).  This inmate was reportedly moved from the area but appeared in Plaintiff's block the evening of November 13, 2022, despite not residing there.  (*Id*.).  Plaintiff immediately told Captain Rizzo, who said Plaintiff would talk to an investigator.  (*Id*.).  Plaintiff had not had the opportunity to do so by November 21, 2022, when he submitted the Complaint.

It appears that Plaintiff did talk to Investigator Bumgardner sometime in the next month. In Plaintiff's Second Motion to amend/supplement (submitted December 21, 2022), he alleges that Bumgardner downplayed Plaintiff's concerns and said that "it was not a PREA when an inmate exposed himself when I woke up from sleep." (Doc. 9, PageID 80).  Plaintiff says that Bumgardner is not the investigator he is supposed to be, is deliberately indifferent, and has racially profiled and discriminated against Plaintiff.  (*Id*., PageID 80-81).

An alleged PREA violation, or a failure to adequately investigate an alleged PREA violation may not be raised under 42 U.S.C. § 1983.  Courts, even where they find such claims concerning, dismiss them:

> With regard to Plaintiff's contention that the consideration of his PREA complaint by Defendant Chesser amounted to a due process violation or cruel and unusual punishment, Plaintiff fails to state a viable claim to relief. He simply has no

<u>constitutional right to compel a proper investigation of his PREA complaint or the</u>
<u>disclosure of video footage, or even to have that complaint investigated at all.</u> *See*
*Violett v. King*, No. 3:19-CV-P524-CHB, 2019 WL 6709391, at *3 (W.D. Ky. Dec.
9, 2019) (citing *Diamond v. Charles*, 476 U.S. 54, 75 (1986); J*acoby v. PREA*
*Coordinator*, No. 5:17-CV-053-MHH-TMP, 2017 WL 2962858, at *4 (N.D. Ala.
Apr. 4, 2017) ("Whether an inadequate [PREA] investigation, or the failure to
investigate at all, no § 1983 liability is created."), *report and recommendation*
*adopted*, 2017 WL 2957825 (N.D. Ala. July 11, 2017)); *Gresham v. Granholm*, No.
2:09-cv-231, 2010 WL 104700, at *3 (W.D. Mich. Jan. 7, 2010) (dismissing
inmate's Section 1983 claim for refusal to investigate alleged crime by staff). Nor
does PREA itself confer any rights for Plaintiff to vindicate here; rather, the statute
authorizes grant money and commissions a study into the problem of prison rape,
without granting to prisoners any private right of action. *See, e.g., Peterson v.*
*Burris*, No. 14-cv-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016)
(collecting cases). With no federal right at stake, the state constitutional and
statutory provisions that Plaintiff alleges were flouted by Defendants in reviewing
his PREA complaint are not remediable under Section 1983—which "is addressed
to remedying violations of federal law, not state law," *Miles v. Mitchell*, No. 3:18-
CV-P116-CRS, 2018 WL 5929643, at *6 (W.D. Ky. Nov. 13, 2018)—nor are they
applicable in the context of this civil claim concerning a prison administrative
proceeding. *See generally Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019)
(finding the PREA grievance process to be "the relevant . . . administrative
remedy").

None of this is to say that the issues addressed by PREA are not serious and
extremely concerning. It is only to say that PREA provides no basis for a cause of
action for Plaintiff here.  Accordingly, the claims involving the alleged mishandling
of Plaintiff's PREA complaint will be dismissed.

*Jackson v. Wicking*, No. 3:20-cv-249, 2020 WL 6874963, at *3 (M.D. Tenn. Nov. 23, 2020).

Plaintiff's similar claim involving PREA here would fail.

## 2.  <u>Not delivering a food box (Shane Sable)</u>

Plaintiff alleges that he did not receive a "food box" that was mailed to him.  (First Motion,

Doc. 7, PageID 75).  He ordered it on December 1, 2022, and by December 9, 2022, had not

received it.  (*Id*.).  Plaintiff suspects that Shane Sable received the box in the mail room but did

not give it to him.  (*Id*.).

This allegation fails to state a claim, as Plaintiff has not shown that state remedies are

inadequate for dealing with this issue:

Plaintiff does not allege in the Complaint that state remedies for the reported deprivation of property are inadequate or unavailable. The Supreme Court of the United States has held that a complaint alleging the negligent or intentional loss of personal property does not state a cognizable claim for relief under § 1983 where state law provides an adequate remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Thus, a plaintiff "does not state a due process claim merely by alleging the deprivation of property." *Darling v. Lake Cnty. Bd. of Comm'rs*, No. 1:12-cv-194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012) (citing *River City Capital, L.P. v. Bd. of Cnty. Com'rs, Clermont Cnty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007) (citing *Parratt*, 451 U.S. 527)). A plaintiff must also plead "that state remedies for redressing the wrong are inadequate." *Perdue v. Ohio Dep't of Corr.*, No. 1:13-cv-878, 2014 WL 661707, at *5 (S.D. Ohio Feb. 19, 2014) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983) and citing *Hudson*, 468 U.S. 517 and *Parratt*, 451 U.S. 527). State remedies in this context may include, among other things, "a judicial remedy in tort." *Pilgrim v. Littlefield*, 92 F.3d 413, 417 (6th Cir. 1996). And, "[s]tate tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses." *Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson*, 468 U.S. at 534-36).

Where a plaintiff "has not alleged any facts which indicate that the state post-deprivation remedies are inadequate or unavailable to redress the wrong," a property-deprivation claim like this one must be dismissed. *Thompson v. Esham*, No. 1:15-cv-553, 2016 WL 692542, at *1 (S.D. Ohio Feb. 22, 2016) (citing *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985) (affirming dismissal of a § 1983 action brought by a prisoner alleging that his personal property was stolen from his cell while he was hospitalized, because "there is no cause of action . . . unless plaintiff pleads and proves that state remedies are inadequate."). Here, Plaintiff has not alleged that Ohio's post-deprivation remedies, particularly state tort remedies, are inadequate or unavailable, and so fails to state a claim on which relief can be granted under the Due Process Clause.

*Fambro v. Blackwell*, No. 2:22-cv-1826, 2022 WL 2071794, at *3 (S.D. Ohio June 9, 2022), *report and recommendation adopted*, 2022 WL 2441253 (S.D. Ohio July 5, 2022).

In this respect, the Undersigned also notes that Plaintiff's request for relief to this Court appears to have been made without any attempt to address the issue through the normal BECI or ODRC procedures. The PLRA requires prisoners to exhaust available remedies **before** approaching a federal court. *See* 42 U.S.C. § 1997e(a). As the Supreme Court of the United States has explained:

> The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."

*Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). "Exhaustion is mandatory and unexhausted claims cannot be brought in court." *Solomon v. Michigan Dep't of Corr.*, 478 F. App'x 318, 321 (6th Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "A prisoner must properly exhaust his remedies <u>before filing</u> his § 1983 complaint." *Soloman* 478 F. App'x at 321 (citing *Woodford*, 548 U.S. at 93) (emphasis added). Relevant here, "Ohio has an established three-step inmate grievance procedure set forth in Ohio Administrative Code § 5120-9-31(K)." *Blissit v. Fiquris*, 345 F. Supp. 3d 931, 937 (S.D. Ohio 2018).

Plaintiff sought relief in his Court, based purely on speculation, that his ordered food items had been received but were being withheld from him. He did so only eight days after ordering those items. (Doc. 7, PageID 75). There is no indication that Plaintiff exhausted all his remedies in that time. Although this claim should be severed and dismissed for other reasons, Plaintiff is warned that failure to exhaust available remedies before filing in federal court could subject later claims to dismissal.

### 3. <u>Inadequate medical care and medication (Joeseph Murphy and BECI Medical Dept.)</u>

Plaintiff asserts that he has received inadequate medical care for several issues, including HBP (presumably, high blood pressure), pre-diabetes, a possibly cancerous lump or cyst, and an ingrown toenail. (Doc 7, PageID 76). He alleges that his HBP medicine was delayed "30 plus days," that he has only seen a dietician once, and that he has not "had any blood test to determine anything." (*Id.*). His main concern, however, appears to be with his ingrown toenail. (*Id.*).

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a plaintiff must do more than simply state that they need particular medical care; the standards are more specific:

> The Eighth-Amendment framework for deliberate indifference claims has an objective and a subjective component. *Griffith [v. Franklin Cnty., Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020)]; *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the [Constitution]." *Griffith*, 975 F.3d at 567 (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)). The subjective component requires a plaintiff to show that "each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Id.* at 568 (quoting Rhinehart, 894 F.3d at 738). This is a high standard of culpability, "equivalent to criminal recklessness." *Id.*

*Greene v. Crawford Cnty., Mich.,* 22 F.4th 593, 605-06 (6th Cir. 2022). *See also Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) ("This is not to say that every request for medical attention must be heeded nor that courts are to engage in the process of second-guessing in every case the adequacy of medical care that the state provides.").

Here, Plaintiff has not pled enough information to plausibly allege that he has sufficiently serious medical needs, or that Joeseph Murphy, the Director of BECI Medical Department, had a sufficiently culpable state of mind regarding Plaintiff's care. It does not appear that Plaintiff has not received any medical care, but that he finds his treatment insufficient or untimely. The Sixth Circuit has noted that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 fn.5. While the Court understands Plaintiff's frustration with not directing his own medical

care, this is insufficient to state a claim. *See Campbell v. Engelsgjerd*, No. 2:07-cv-77, 2008 WL 4394673, at *1 (W.D. Mich. Sept. 24, 2008) (dismissing Eighth Amendment claims to have ingrown toenail removed, saying: "That Plaintiff disagrees with the course treatment or has experienced some pain from his condition is insufficient to support an Eighth Amendment claim.").

The Medical Department itself is not a proper defendant that can be sued under § 1983. *See Honzu v. Warden, Ross Corr. Inst.*, No. 2:22-cv-292, 2022 WL 3018095, at *10 (S.D. Ohio July 29, 2022), *report and recommendation adopted*, 2022 WL 17974392 (S.D. Ohio Dec. 28, 2022) (citing *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006)) ("the Medical Department, like the State of Ohio or the ODRC, is not a 'person' that can properly be sued under § 1983").

As written, these allegations fail to state a claim upon which relief may be granted.

### 4. *Not getting passes to, or a seat in, the law library (Kuryn and Clarick)*

Plaintiff appears to assert that Librarian Kuryn and Captain C. Clarick interfered with his ability to prepare for a Court of Claims filing. (Doc. 9, 12). Specifically, Plaintiff alleges that Kuryn made him wait to use a computer in the law library when he had a deadline to meet. (Doc. 9). He alleges that she did so as retaliation for him filing this lawsuit. (*Id.*). Plaintiff also asserts that Kuryn favored white inmates and has purposefully made "copies of the material I did not want, just to see my lawsuit fail." (*Id.*). Plaintiff also alleges that Kuryn blocked his right to litigate by not sending him passes to the library as he requested. (Doc. 12, PageID 104). In this respect, Plaintiff provides a Grievance Communication wherein he requested and was *granted* passes to the library but was admonished for calling Kuryn "honey." (*See* Doc. 10, PageID 98).

Plaintiff alleges that Captain C. Clarick discriminated against him on the basis of his race when he stopped Plaintiff from visiting the library on December 27, 2022. (Doc. 12, PageID 104).

He alleges that Clarick was deliberately indifferent and conspired with Librarian Kuryn to keep him from accessing the courts.  (*Id.*, PageID 105).  From context, this appears to also concern Plaintiff's proceedings in the Ohio Court of Claims.  (*Id.*).

Plaintiff's allegations fail as a claim for denial of access to the courts, because Plaintiff has failed to allege any actual injury with respect to his Court of Claims case.  *See Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002).  The Ohio Court of Claims' website reflects four cases that appear to have been filed by Plaintiff, two of which were filed in 2022.  *See* Ohio Odyssey Portal, available by name search at https://portal-ohcoc.tylertech.cloud/Portal/Home/Dashboard/29 (accessed Mar. 7, 2023).  The most recent case, Case No. 2022-00783JD, was filed on November 14, 2022, and is pending as of this writing.

Plaintiff's allegations fail as a claim for retaliation because a wait to use the law library on a particular day is a *de minimus* inconvenience that would not "deter a person of ordinary firmness" from exercising his right to access the court.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 396-99 (6th Cir. 1999).  The same is true of Plaintiff's claim that Librarian Kuryn copied information for Plaintiff that he did not need.

Plaintiff's allegations fail as a claim for conspiracy because there are insufficient facts provided to satisfy the relatively strict pleading standard for a conspiracy claim.  *See generally Regets v. City of Plymouth*, 568 F. App'x 380, 391 (6th Cir. 2014) (citing *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989) ("mere speculation and conjecture are insufficient to establish the existence of an agreement" for a conspiracy claim).  In other words, simply labelling behavior as a conspiracy is not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (a complaint that consists of "labels and conclusions" is insufficient).

Plaintiff's allegations likewise fail as an equal protection claim, because Plaintiff's conclusory statements and allegation of racism are insufficient to state such a claim. *See Jackson v. Madery*, 158 F. App'x 656, 659 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)) ("vague, conclusory allegations of racial discrimination are not enough to state an equal protection claim."). The Undersigned notes that this is not a determination that Plaintiff has not faced discrimination, but a determination that he has not brought to this Court sufficient factual allegations to state a plausible claim in this respect under the Equal Protection Clause.

These allegations, even if the Court were to permit them to be included in this lawsuit, do not contain sufficient *factual* information to state a claim on which relief may be granted.

### 5. *Discipline for a "loud irate & disrespectful" phone call (Investigator Bumgardner)*

Plaintiff reports being disciplined on November 13, 2022, for making a "loud irate & disrespectful" phone call to the Clerk of Court of Wyandot County, Ohio.[18] (Doc. 9, PageID 80). He was placed in "the hole" (segregation) as a result. (*Id.*).

Unless a disciplinary sanction rises to the level of an "atypical and significant hardship," or "will inevitably affect the duration of [the prisoner's] sentence," it generally does not raise a liberty interest that the prisoner can seek to vindicate in federal court. *Jarrett v. Greene*, No. 1:22-cv-456, 2022 WL 13795466, at *11 (S.D. Ohio Oct. 24, 2022), *report and recommendation adopted*, 2022 WL 17253595 (S.D. Ohio Nov. 28, 2022). The punishment of "[c]onfinement in

---

[18] Plaintiff previously attempted to sue the Clerk of Wyandot County (along with the Clerk of Marion County and others) in this case. (*See* Doc. 4-6 herein). These documents were separated into a new case. *See Johnson v. City of Upper Sandusky*, S.D. Ohio Case No. 2:22-cv-4408. This Court transferred the case to the United States District Court for the Northern District of Ohio. (*See* Doc. 2 in Case No. 2:22-cv-4408). It appears that Plaintiff had a case pending in Wyandot County in 2021 and 2022, and Plaintiff acknowledges that he spoke with, and disagreed with, the Clerk. (*See* Doc. 4, PageID 38-39 in the instant case). The Northern District summarily dismissed Plaintiff's claims against these parties as without merit. *See Johnson v. City of Upper Sandusky*, N.D. Ohio Case No. 3:22-cv-2320 (Jan. 23, 2023).

segregation generally does not rise to the level of an atypical and significant hardship except 'in extreme circumstances,' such as when a prisoner is subject to an excessively long or indefinite administrative segregation.  *Id*. (quoting *Joseph v. Curtin*, 410 F. App'x. 865, 868 (6th Cir. 2010)) (noting that a prisoner's 8-year confinement in segregation was of "atypical duration" and presented a cognizable liberty interest).  This does not appear to be the case here, as Plaintiff was reportedly sanctioned fairly recently, on December 13, 2022, and there is no information about how long the sanction lasted.  (Doc. 9, PageID 80).  Plaintiff has therefore not pled a cognizable liberty interest sufficient to state a due process claim.

### 6. *Being denied due process at an internal prison hearing (Sergeant Henry)*

Plaintiff alleges that Sergeant Henry sanctioned him without due process and denied his right to appeal and produce exculpatory evidence.  (Doc. 12, PageID 104-105).  It appears from context that this allegation relates to an internal disciplinary proceeding, which may be related to Plaintiff's claims against Librarian Kuryn and Captain Clarick.  (*Id*.).  Plaintiff does not say what disciplinary sanction he received at this hearing.  (*Id*.).

As discussed in the previous section, prison disciplinary sanctions rarely support a due process claim, because there is no liberty interest unless the sanction imposes an atypical and significant hardship or will inevitably affect the duration of the prisoner's sentence.  *See Jarrett*, 2022 WL 13795466, at *10-12 (none of the following sanctions generally satisfy this standard: confinement in segregation, assignment to restrictive housing, an increase in security classification, institutional transfer, denial of visitation or access to the commissary, denial of television and radio privileges).

Here, Plaintiff has not identified the sanction at all, which is failure of pleading in this respect.  Had Plaintiff identified the sanction, and it did provide a liberty interest that Plaintiff could pursue in a Section 1983 action, the review of such a claim is limited:

> [E]ven assuming Plaintiff had a protected liberty interest, **a federal court's ability to review prison disciplinary procedures is very limited, and a court must uphold a prison disciplinary board's determination as consistent with due process as long as the prisoner received basic procedural protections and the prison disciplinary committee's findings are supported by "some evidence" in the record.** *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 at 455 (1985). "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). It is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board," even when the evidence used against the prisoner "might be characterized as meager." *Hill*, 472 U.S. at 455, 457. Although Plaintiff contests the propriety of the disciplinary charges and determination against him, his Complaint does not allege cogent facts plausibly suggesting he was denied requisite basic procedural protections, and it is apparent that "some evidence" existed to support the disciplinary determination made.

*Jarrett*, 2022 WL 13795466, at fn.11 (quoting *Spencer v. Sheldon*, No. 22-cv-210, 2022 WL 1803341, at *2-3 (N.D. Ohio June 2, 2022) (emphasis added in *Jarrett*). *See also Johnpillai v. Chambers-Smith*, No. 3:21-cv-02037, 2022 WL 2986046, at *2 (N.D. Ohio July 28, 2022) (citing *Hill*, 472 U.S. at 455 (1985) (wherein a district judge screening a prisoner complaint about RIB sanctions said: "My ability to review prison disciplinary proceedings is limited. I may not re-weigh the evidence presented to the disciplinary board or re-examine its credibility determinations.").

Plaintiff's brief, vague allegations about the hearing with Sergeant Henry fail to state a claim on which relief may be granted, even when they are construed liberally in his favor.

### C. Grievance Claims in the Complaint and Motions to Amend/Supplement

Plaintiff asserts that BECI staff either did not timely respond to, or denied, his grievances or other communications seeking a resolution of his mail situation. (Complaint, PageID 111). He raises a similar issue about his communications concerning the alleged PREA issue (*id*.) as well as with respect to Shane Sable and medical issues. (Doc. 7, PageID 76).

These allegations do not independently state a claim. "Section 1983 liability cannot be based upon a defendant's handling of a grievance or failure to remedy unconstitutional behavior

committed by others." *Taylor v. First Med. Mgmt.*, No. 18-5282, 2019 WL 1313828, at *3 (6th Cir. Feb. 21, 2019) (citing *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)). This is because a § 1983 claim requires a plaintiff to allege the deprivation of a *constitutional* right. *LaFlame v. Montgomery Cnty. Sheriff's Dep't.*, 3 F. App'x 346, 348 (6th Cir. 2001). But "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003).[19] These claims, therefore, fail to state a claim on which relief may be granted. To the extent that they are raised in the Complaint about the main mailing issue, they should be dismissed. To the extent they are raised in the Complaint about other issues, or raised in the Motions to Amend/Supplement, they should be severed and dismissed without prejudice.

### D.     Other Labels and State Law Claims

Finally, Plaintiff's filings recite the following labels or names of claims, but do not provide factual allegations to support them: "ADA violations," failure to train and supervise, retaliation (with the exception of the allegation against Librarian Kuryn discussed above), and claims under the Ohio Corrupt Practices Act.

As discussed above, simply including these labels or conclusions in a Complaint is not enough. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As one court put it:

> In order to assert a cognizable § 1983 claim, a plaintiff must allege specific facts. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The required facts must provide adequate detail to support the claim, such as specific incidents of deprivation of a plaintiff's rights, how each defendant was involved, the names of other persons involved, dates, and places. The specific facts must also explain how the plaintiff himself was personally injured by the challenged conduct or condition, *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986), and how each defendant is responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Allegations premised upon mere conclusions and opinions fail to state an

---

[19] This is not to say that a prisoner does not have a right to file grievances, but that the denial of a grievance is not a free-standing constitutional claim. *Receiving a* p*unishment* for filing a nonfrivolous grievance may state a retaliation claim. *See generally, Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (citing *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000)) ("Prisoners have a First Amendment right to file institutional grievances without being subject to retaliation . . . ; however, this right only extends to the filing of non-frivolous grievances.").

adequate claim, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and bare and conclusory allegations that a defendant personally deprived the plaintiff of constitutional or statutory rights are insufficient to state a cognizable claim. *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983).

Furthermore, a complaint filed under § 1983 must also show a causal connection between the named defendants and the alleged constitutional deprivation. A § 1983 complaint must allege that specific conduct by the defendants was the proximate cause of the constitutional injury. *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986).

*Allen v. Aramark Corp.*, No. 3:07-cv-P260, 2009 WL 1126093, at *3 (W.D. Ky. Apr. 27, 2009).

These claims cannot proceed. 28 U.S.C. §§ 1915A(b) and 1915(e)(2).

Furthermore, to the extent that Plaintiff is attempting to raise state law claims under the Ohio Corrupt Practices Act, for intentional infliction of emotional distress, breach of duty or negligence, or other claims arising solely under state law, the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and dismiss such claims without prejudice. *See Brooks v. Rothe,* 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x. 382, 384-85 (6th Cir. 2003)) (a "district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well.").

## V. THE "THREE STRIKES" PROVISION OF THE PRISON LITIGATION REFORM ACT

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(2) as part of the statute, which provides for the screening and dismissal of claims that are frivolous or malicious, that fail to state a claim upon

which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31.  *See also* § 1915A(b).

A prisoner's ability to proceed *in forma pauperis* is limited by the so-called "three-strikes" provision of the Prison Litigation Reform Act (PLRA).  This provision bars a prisoner from proceeding *in forma pauperis* where the prisoner has,

> on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  "The 'three strikes' provision was 'designed to filter out the bad claims and facilitate consideration of the good.'"  *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)).

While this Court cannot bind later courts that may consider whether Plaintiff has already accumulated three strikes, the Court can recommend that this case be treated as a strike.  *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021) ("Even if the ruling court may not be able to bind later courts to a strike characterization, it often will make sense for the court that dismisses a prisoner's suit to make a non-binding strike recommendation—sometimes what amounts to a strike warning.").  The Court should so recommend here.

The Undersigned notes that the United States District Court for the Northern District has dismissed (at least) three of Plaintiff's civil cases:

1. *Johnson v. Management Training Corporation,* N.D. Ohio Case No. 3:22-cv-1482 (summarily dismissed on October 6, 2022, because Plaintiff sent fentanyl to the court with a document for filing).

2. *Johnson v. Taco Bell Corp. California*, N.D. Ohio Case No. 3:22-cv-2319 (summarily dismissed on January 12, 2023, as lacking merit).[20]

3. *Johnson v. City of Upper Sandusky*, N.D. Ohio Case No. 3:22-cv-2320 (summarily dismissed on January 23, 2023, as lacking merit).[21]

A prisoner's appeals to the Sixth Circuit may also constitute "strikes" under the statute. 28 U.S.C. § 1915(g) (referring to "an action <u>or appeal</u> in a court of the United States") (emphasis added). Three such appeals appear on the Sixth Circuit's record, and appear to arise from the three Northern District cases mentioned in the immediately preceding paragraph. *See* Case Nos. 22-4032, 23-2119, and 23-3134, respectively.

Plaintiff may bear the burden of convincing later courts that these cases do not count as strikes. *See Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 497 n.8 (6th Cir. 2012) (citations omitted) ("When, as in this case, a magistrate judge recommends that the plaintiff has three or more strikes, the plaintiff bears the burden of persuading the district court that the identified cases are not strikes.").

The Undersigned provides this warning so that Plaintiff may understand how later cases may be treated and that he may be denied the ability to proceed *in forma pauperis* in later cases if a district court is satisfied that he has had three or more federal court actions or appeals dismissed on the grounds that they were frivolous, malicious, or fail to state a claim upon which relief may be granted. With respect to this case, the Court should **RECOMMEND** that this case be treated as a strike.

---

[20] N.D. Ohio Case No. 3:22-cv-2319 began in this Court and was transferred to the Northern District. *See* S.D. Ohio Case No. 2:22-cv-4377.

[21] N.D. Ohio Case No. 3:22-cv-2320 began in this Court and was transferred to the Northern District. *See* S.D. Ohio Case No. 2:22-cv-4408.

## VI.    CONCLUSION AND RECOMMENDED DISPOSITION

The Undersigned has carefully considered the allegations in Plaintiff's Complaint and three Motions to Amend/Supplement it.  None of the claims should proceed.  The First Motion to Amend/Supplement (Doc. 7) is **GRANTED**.  The Undersigned **RECOMMENDS** that the Court:

1.    **SEVER** the claims in the First Motion against Defendant Sable, Murphy, and the BECI Medical Department and **DISMISS** them without prejudice;

2.    **DENY** the Second Motion (Doc. 9) and the Third Motion (Doc. 12) to Amend/Supplement as these amendments would be futile, because they would result in misjoinder and/or because the allegations fail to state a claim on which relief may be granted;

3.    **SEVER** the claim in the Complaint (Doc. 14) against Defendant Rizzo and **DISMISS** it without prejudice;

4.    **DISMISS** all the remaining claims in the Complaint against Defendants Chambers-Smith, Gray, Scott, Moore, Haley, Henry, Taylor, Matesick, and the ODRC, all under 28 U.S.C. §§ 1915A(b) and 1915(e)(2);

5.    **RECOMMEND** that this case be treated as a strike for purposes of the three strikes provision of the PLRA, 28 U.S.C. § 1915(g); and

6.    **CERTIFY** pursuant to 28 U.S.C. § 1915(a)(3) that, for the reasons discussed above, an appeal of any Order adopting this Report and Recommendations would not be taken in good faith, and therefore, deny Plaintiff leave to appeal *in forma pauperis*.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## VII.    Notice Regarding Objections to this Report and Recommendations

If any party objects to this Report and Recommendations ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN DAYS** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**


March 17, 2023                                    *s/Peter B. Silvain, Jr.*
                                                  PETER B. SILVAIN, JR.
                                                  UNITED STATES MAGISTRATE JUDGE


53